IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-2741

ANDREW BARRERA

    Plaintiff,

vs.

RUBADUE WIRE COMPANY, INC. a Colorado corporation,
MICHELLE BAYNE, an individual,
TOM CRILLY, an individual,

    Defendants.

_____

## COMPLAINT AND JURY DEMAND
_____

Plaintiff, Andrew Barrera, by and through his undersigned attorney, for this Complaint against Defendants Rubadue Wire Company, Inc. and Michele Bayne, and states as follows:

### NATURE OF ACTION

1.    Mr. Barrera brings this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a) and alleges interference with, and discrimination and retaliation for exercising, his rights thereunder by his former employer, Defendant Rubadue Wire Company, Inc. ("Rubadue"), the company's Human Resources Manager, Defendant Michelle Bayne ("Ms. Bayne"), and his former supervisor, the company's Manager of Manufacturing, Tom Crilly ("Mr. Crilly").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the FMLA, 29 U.S.C. § 2601, *et seq.*

3. This Court has jurisdiction over Plaintiff's state-law "claim" discussed below, pursuant to 28 U.S.C. § 1367, because it is so related to Plaintiff's FMLA claims that it forms part of the same case or controversy.

4. Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District and because Rubadue does business and is located in this District.

5. This Court has personal jurisdiction over Rubadue because it does business and is found in the District of Colorado, and because the claims set forth herein arise, in whole, from events that occurred in the District of Colorado.

6. This Court has personal jurisdiction over Ms. Bayne because, upon information and belief, she is still employed by Rubadue and resides in Colorado.

7. This Court has personal jurisdiction over Mr. Crilly because, upon information and belief, he is still employed by Rubadue and resides in Colorado.

## PARTIES

8. Mr. Barrera is an adult citizen of the State of Colorado and resides in Greeley.

9. At all material times to this Complaint, Mr. Barrera was an "eligible employee," within the meaning of 29 U.S.C. § 2611(2), because he had been employed by Rubadue for at least twelve (12) months prior to the events described in this Complaint

and worked at least 1,250 hours for Rubadue during the twelve (12) month period preceding the events described herein.

10. Rubadue is a Colorado corporation doing business at its location in Loveland.

11. At all times material to this Complaint, Rubadue was Mr. Barrera's employer within the meaning of 29 U.S.C. § 2611(4).

12. At all times material to this Complaint, Ms. Bayne was Rubadue's human resources manager.

13. At all times material to this Complaint, Mr. Crilly was Mr. Barrera's supervisor at Rubadue.

## FACTS

14. Rubadue operates a 47,000 square foot factory at its headquarters in Loveland, Colorado, where it manufactures customized engineered wire and cable products.j

15. Mr. Barrera worked for Rubadue from October 5, 2005 to August 28, 2019.

16. Mr. Barrera worked full-time as an Extruder in Rubadue's Manufacturing division.

17. At all relevant times, Mr. Barrera's job performance was fully satisfactory.

18. According to Rubadue's Employee Handbook, company policy recognized and complied with employees' eligibility to apply for and take FMLA leave.

19. According to Rubadue's Employee Handbook, the company also provided employees with "Paid Family Leave (PFL)", by which it paid for a portion of an employee's FMLA-approved leave.

20. According to Rubadue's Employee Handbook, the company provided its eligible employees with Paid Time Off (PTO), which they could use for vacation, illness or injury, or personal business.

21. Rubadue's PTO policy provided that a regular full-time non-exempt (hourly) employee with 5 years but less than 15 years of full time employment would accrue 16 hours of PTO per month (192 hours of PTO per year).

22. Rubadue's PTO policy further provided that such leave could be taken in 4 or 8-hour increments.

23. At all times throughout his employment at Rubadue, Mr. Barrera's wife suffered from serious health problems related to a degenerative spinal condition.

24. Mr. Barrera frequently had to take time off from work to help his wife obtain medical care for her serious health conditions, including transporting her to and from doctors' appointments, surgeries, and other medical procedures, and to help care for her directly at home.

25. Prior to approximately 2017, Mr. Barrera worked the night shift, 10 p.m. to 6 a.m.

26. While he worked the night shift, Mr. Barrera was able to minimize the number and frequency of occasions on which he needed to take leave to help care for his wife.

27. However, in approximately 2017, Mr. Barrera switched to second shift, which was from 2 p.m. to 10 pm.

28. After switching to second shift, Mr. Barrera needed to take leave more often to help care for his wife, because of some of her medical appointments, and/or need for further care, during the latter part of the day.

29.     Ms. Bayne was Rubadue's human resources manager during the entire period of Mr. Barrera's employment.

30.     At all relevant times, Ms. Bayne was personally aware of Mr. Barrera's wife's health problems, and of Mr. Barrera's need for leave to take care of his wife.

31.     Upon information and belief, Ms. Bayne advised Mr. Barrera's supervisors, including Mr. Crilly, regarding the details of Mr. Barrera's work attendance and absences, use of leave, and use of FMLA-approved leave.

32.     At no time prior to August 2018 did Ms. Bayne, Mr. Crilly, or any other representative of Rubadue notify Mr. Barrera of his eligibility to take FMLA leave.

33.     Mr. Barrera's wife's mother suggested to him that he should apply for FMLA leave.

34.     Following his mother-in-law's advice, Mr. Barrera applied for FMLA leave to take care of his wife in approximately mid-August 2018.

35.     Defendants received Mr. Barrera's application for FMLA leave, and required him to provide a completed certification from his wife's health care provider.

36.     Mr. Barrera provided the completed health care provider certification regarding his wife's serious health condition, on or about August 30, 2018.

37.     On September 21, 2018, Rubadue provided Mr. Barrera with a Designation Notice, which indicated it had approved his FMLA leave request, retroactive to September 11, 2018.

38. The Designation Notice stated that Mr. Barrera's anticipated FMLA leave schedule would include absences of "1-5 days per week @ 2-8 hrs per day, intermittent leave for family member".

39. Also on September 21, 2018, Rubadue provided Mr. Barrera with a Notice of Eligibility and Rights & Responsibilities under the FMLA.

40. That Notice stated that Mr. Barrera was required to provide the company, via Ms. Bayne, periodic reports of his status and intent to return to work every Friday.

41. At all relevant times, Mr. Barrera fully complied with all company, legal, and regulatory requirements related to his use of approved FMLA intermittent leave.

42. Prior to September 11, 2018, during calendar year 2018, upon information and belief, Mr. Barrera took approximately at least 8-10 days of leave to care for his wife. Rubadue, via its agent Ms. Bayne, and Mr. Barrera's supervisor(s), were aware of Mr. Barrera's absences on each of these occasions, and the FMLA-qualifying reasons for those absences.

43. Defendants did not retroactively designate as FMLA any of the leave that Mr. Barrera had previously taken in 2018 to care for his wife prior to September 11, 2018.

44. Mr. Barrera's right to 12 weeks of FMLA leave in a 12-month period was calculated going forward from the approval of his request on September 21, 2018.

45. On April 13, 2019, Rubadue gave Mr. Barrera an Employee Warning Notice and a three-day suspension for alleged excess absences and lateness. Upon information and belief, the purported bases for this adverse employment action were unscheduled

and unanticipated absences during which Mr. Barrera had to care for his wife, and for which he provided notice to Rubadue as soon as reasonably practicable.

46.     Rubadue was required to designate all of the instances of absences and/or lateness, which it cited in the April 13, 2019 action, as FMLA leave. It failed to do so and, upon information and belief, also failed to provide written notice to Mr. Barrera that it would not designate those instances as FMLA-qualifying.

47.     Rubadue alleges that Mr. Barrera took sixty (60) full days (i.e. 12 weeks) of FMLA leave from September 12, 2018 to July 30, 2019. Mr. Barrera disputes this and, upon information and belief, asserts that at least some of these instances were for periods of less than one full work day, in which case the PTO policy provided for leave in a 4-hour increment, not the full 8-hour day.

48.     Defendants terminated Mr. Barrera's employment on August 28, 2019.

49.     Ms. Bayne and Mr. Crilly were present during the separation meeting with Mr. Barrera, at which he was provided a Separation Notice form.

50.     The Separation Notice stated the reason for separation was "Attendance". It also evaluated Mr. Barrera's job performance. He was rated either "Satisfactory" or "Outstanding" in every category except "Reliability" and "Attendance".

51.     Had Defendants complied with their legal obligation to notify Mr. Barrera of his eligibility for FMLA leave before September 11, 2018, when they had adequate notice of his need for such leave, Mr. Barrera would have applied for, and been granted, FMLA leave at least several months earlier. In addition, had that happened, Mr. Barrera would not have exhausted the full 12 weeks of FMLA leave within 12 months of that date, and

would have been eligible for another 12 weeks of FMLA leave for the succeeding year of employment.

52. On August 3, 2020, undersigned counsel for Mr. Barrera wrote a "demand" letter to Rubadue, addressed to Ms. Bayne. The company received that letter and responded, through its counsel, by letter dated August 31, 2020.

53. The demand letter contained a request, on behalf of Mr. Barrera, to receive a copy of, or the opportunity to inspect, his personnel file, as required by the Colorado Personnel File Access law, C.R.S. § 8-2-129.

54. Rubadue did not provide any response to the personnel file request. It did not provide Mr. Barrera with a copy of, or the opportunity to inspect, his personnel file.

## **FIRST CAUSE OF ACTION:**
## **INTERFERENCE WITH PLAINTIFF'S EXERCISE OF RIGHTS UNDER THE FMLA, 29 U.S.C. § 2615(a)(1)**

55. Mr. Barrera incorporates by reference all preceding paragraphs of this Complaint.

56. Rubadue is engaged in "commerce" and employs 50 or more employees.

57. Rubadue is therefore an "employer" as defined by the FMLA. 29 U.S.C. § 2611(4)(A)(i).

58. In her capacity as Rubadue's Human Resources Manager, Ms. Bayne is a person who acted, directly or indirectly, in the interest of the company in relation to Mr. Barrera's employment.

59. Ms. Bayne is therefore an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I).

60.     In his capacity as Rubadue's Manager of Manufacturing, Mr. Crilly is a person who acted, directly or indirectly, in the interest of the company in relation to Mr. Barrera's employment.

61.     Mr. Crilly is therefore an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I).

62.     Mr. Barrera was employed by Rubadue full-time for at least 12 months, and had worked at least 1,250 hours for the company during the 12-month period preceding his application for FMLA leave.

63.     At all relevant times, Mr. Barrera was therefore an "eligible employee" as defined by the FMLA. 29 U.S.C. § 2611(2)(A).

64.     The FMLA prohibits an employer from interfering with the exercise of or the attempt to exercise any right provided by the FMLA. 29 U.S.C. § 2615(a)(1).

65.     Mr. Barrera exercised a right under the FMLA when he took leave to assist his wife for treatment of a serious medical condition beginning on September 11, 2018.

66.     Pursuant to the U.S. Department of Labor regulations implementing and enforcing the FMLA, 29 C.F.R. § 825.302(c), Defendants were required to inquire whether Mr. Barrera needed to apply for FMLA leave, once Mr. Barrera had provided verbal notice sufficient to make Defendants aware that his need for leave was for an FMLA-qualifying reason.

67.     By failing to inquire about Mr. Barrera's reasons for requesting leave to care for his wife *prior to* September 11, 2018, Defendants willfully interfered with, restrained and

denied Mr. Barrera's exercise of his rights as guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

68.     *After* Defendants approved Mr. Barrera's request for intermittent FMLA leave, on those occasions when Mr. Barrera could not foresee the need for leave in advance, he provided notice to the company as soon as practicable.

69.     The information Mr. Barrera provided on those occasions was sufficient for the company to reasonably determine that the FMLA applied to the leave. Pursuant to 29 C.F.R. § 825.303(b), if the company believed otherwise, it failed to request any additional information from Mr. Barrera in order to determine whether each such absence was potentially FMLA-qualifying.

70.     Regardless, Defendants did not provide any timely written notice to Mr. Barrera that it had determined that any of his absences as not covered by FMLA, as required by 29 C.F.R. 825.300(d)(1).

71.     By failing to notify Mr. Barrera of the determination that any of his absences were not covered by FMLA, Defendants willfully interfered with, restrained and denied Mr. Barrera's exercise of his rights as guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

72.     By giving Mr. Barrera the Employee Warning Notice and a three-day suspension on April 13, 2019, Defendants willfully interfered with, restrained and denied Mr. Barrera's exercise of his rights as guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

73. As a direct and proximate result of Defendants' violations of 29 U.S.C. § 2615(a)(1), Mr. Barrera has suffered economic damages, including his lost wages and other benefits of employment.

74. Mr. Barrera is entitled to equitable relief, monetary relief for losses he has sustained as a result of Defendants' unlawful conduct, interest on that amount, liquidated damages, and attorney's fees and costs, as provided by 29 U.S.C. § 2617, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION:**
**RETALIATION AGAINST PLAINTIFF FOR ENGAGING IN PROTECTED ACTIVITY UNDER THE FMLA, IN VIOLATION OF 29 U.S.C. § 2615(a)(2)**

75. Mr. Barrera incorporates by reference all preceding paragraphs of this Complaint.

76. The FMLA prohibits an employer from discharging or in any manner discriminating against an individual because he engaged in FMLA protected activity.

77. Mr. Barrera engaged in FMLA-protected activity when he requested and was granted leave to help provide care for his wife's serious health condition.

78. By giving Mr. Barrera the Employee Warning Notice and a three-day suspension on April 13, 2019, Defendants willfully discriminated and retaliated against Mr. Barrera for exercising his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

79. By terminating Mr. Barrera's employment, Defendants willfully discriminated and retaliated against Mr. Barrera for exercising his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

80. Defendants would not have disciplined Mr. Barrera had he not taken leave for FMLA-qualifying reasons.

81. Defendants would not have terminated Mr. Barrera's employment had he not taken leave for FMLA-qualifying reasons.

82. Defendants' decisions to discipline Mr. Barrera, and to terminate Mr. Barrera's employment, were motivated by his absences from work on FMLA-protected leave.

83. As a direct and proximate result of Defendants' violations of 29 U.S.C. § 2615(a)(2), Mr. Barrera has suffered economic damages, including his lost wages and benefits.

84. Mr. Barrera seeks equitable relief, damages for actual monetary losses that he has sustained as a result of Defendants' unlawful conduct, interest on that amount, liquidated damages, and attorney's fees and costs, as provided by 29 U.S.C. § 2617, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION:
### VIOLATION OF COLORADO PERSONNEL FILE ACCESS LAW, C.R.S. § 8-2-129

85. Mr. Barrera incorporates by reference all preceding paragraphs of this Complaint.

86. In relevant part, C.R.S. § 8-2-129 requires every employer in Colorado to permit a former employee to inspect and obtain a copy of his personnel file after termination of employment.

87. Rubadue is an employer covered by this law, and is required to comply with it.

88. Mr. Barrera exercised his right under this law, but Rubadue did not comply.

89. Although the statute expressly states that it does not create or authorize a private cause of action by a person aggrieved by a violation of this section, Mr. Barrera asserts that this Court has jurisdiction in this matter to simply order Rubadue to promptly comply with the law, as a form of equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Andrew Barrera, respectfully requests judgment and prays for the following relief:

A.	Damages equal to the amount of wages, salary, employment benefits and other compensation denied or lost to Plaintiff by reason of the three-day suspension he received, and the termination of his employment, together with interest thereon, pursuant to 29 U.S.C. §2617(a)(l)(A)(i)(I) and (ii).

B.	An additional amount as liquidated damages equal to the amount of damages and interest awarded as requested in paragraph (B) above, pursuant to 29 U.S.C. § 2617(a)(l)(A)(iii).

C.	Reinstatement of Plaintiff's employment, or front pay in lieu of reinstatement.

D.	Plaintiff's costs of this action, reasonable attorney fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3); and

E.	Such other legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated this 9th day of September 2020.

                                        Gary Kramer Law, LLC

                                        */s/Gary M. Kramer*
                                        Gary M. Kramer
                                        1465 Kelly Johnson Blvd, Suite 210
                                        Colorado Springs, CO  80920
                                        Tel (719) 694-2783
                                        Fax (719) 452-3622
                                        gary@garykramerlaw.com
                                        Attorney for Plaintiff, Andrew Barrera